IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOUGLAS J. ANDERSON, *as Administrator of the Estate of Theresa R. Anderson*, and DOUGLAS J. ANDERSON, *in his own right*,

Plaintiff,

v.

MOTORIST MUTUAL INSURANCE COMPANY,

Defendant.

2:21-CV-00493-CCW

**MEMORANDUM OPINION**

Before the Court is a Partial Motion for Summary Judgment by Plaintiff Douglas J. Anderson, as the administrator of the Estate of Theresa R. Anderson, and in his own right ("Mr. Anderson"), ECF No. 20, and a Motion for Summary Judgment by Defendant Motorists[1] Mutual Insurance Company ("Motorists Mutual"), ECF No. 17.

Mr. Anderson settled with third party tortfeasors following a motor vehicle accident in which Theresa Anderson was killed. ECF No. 19 ¶¶ 1–12, 17–18. He then filed a claim for underinsured motorist ("UIM") benefits with Motorists Mutual. ECF No. 19 ¶¶ 13–15, 18. The parties' cross-motions for summary judgment focus on the amount of credit to which Motorists Mutual is entitled on Mr. Anderson's UIM claim. *Id.* ¶ 19.

For the reasons that follow, Mr. Anderson's Partial Motion for Summary Judgment will be GRANTED in part with respect to the fact that Motorists Mutual is not entitled to a $500,000

---

[1] Motorists Mutual contends that it is incorrectly identified as "Motorist Mutual Insurance Company." ECF No. 17 at 1.

credit pursuant to the Pennsylvania Political Subdivision Tort Claims Act, and DENIED in all other respects.

Further, Motorists Mutual's Motion will be GRANTED such that Court will enter a declaratory judgment that Motorists Mutual is entitled to a credit of $5,100,000 on Mr. Anderson's UIM claim.

**I.   Background**

This case relates to an October 30, 2012 motor vehicle accident in which Theresa Anderson was killed. ECF No. 19 ¶ 1. After the accident, Mr. Anderson sued the third-party tortfeasors who were involved in the accident. After settling with the third parties, he filed a claim for underinsured motorist ("UIM") benefits with Motorists Mutual. ECF No. 19 ¶¶ 2–18. Motorists Mutual reviewed Mr. Anderson's UIM claim and denied it on the basis that the value of the claim did not exceed the combined $5,100,000 liability limits of the third-party tortfeasors. *Id.* ¶ 19.

Mr. Anderson filed a Complaint in the Court of Common Pleas of Allegheny County against Motorists Mutual seeking that the Court find that Mr. Anderson is legally entitled to recover the total amount of underinsured benefits available under the Motorist Mutual Policies. ECF No. 1-2 at 11.

Motorists Mutual, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332, timely removed the action to this Court. *Id.* ¶¶ 20–21; *see* ECF No. 1. Motorists Mutual then filed its answer, defenses, and counterclaim. ECF No. 19 ¶ 22; *see generally* ECF No. 3. Motorists

Mutual's counterclaim requests a declaratory judgment that it is entitled to a credit of $5,600,000[2] against any award in the UIM case.  ECF No. 3 ¶ 38.

Although not discussed in the parties' summary judgment briefing, this Court finds that the constitutional standing requirements of a "case" or "controversy" are met in this case such that the Court has the ability to issue declaratory judgment.  *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."); *Ke v. Dipasquale*, 828 F. App'x 98, 101 (3d Cir. 2020) (quoting *St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin* Islands, 218 F.3d 232, 240 (3d Cir. 2000)) (noting that as a threshold matter, "[a] declaratory judgment or injunction can issue only when the constitutional standing requirements of a 'case' or 'controversy' are met and … [such standing] exists when there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (internal quotations omitted)).

Following discovery, the parties filed their motions for summary judgment, which are now ripe for disposition.

---

[2] Motorists Mutual initially sought a declaratory judgment that it is entitled to a credit of $5,**6**00,000 against Mr. Anderson's claim. ECF No. 3 ¶ 38.  However, Mr. Anderson's Partial Motion for Summary Judgment contends that Motorists Mutual is not entitled to a credit of $500,000 based upon the limit of the City of Pittsburgh's liability under the Pennsylvania Political Subdivision Tort Claims Act, ECF No. 21 at 13, and Motorists Mutual concedes that it is not entitled such credit. ECF No. 29 at 5-6; *see also* ECF No. 19 ¶ 22 (Motorists Mutual's concise statement characterizing its counterclaim as seeking declaratory judgment that it is entitled to a credit of $5,**1**00,00 against any award in the UIM case). Thus, the Court will GRANT Mr. Anderson's Motion in part on the issue of the City of Pittsburgh credit, and finds that Motorists Mutual is not entitled to a $500,000 credit pursuant to the Pennsylvania Political Subdivision Tort Claims Act.

## II. Undisputed Material Facts

Motorists Mutual filed a concise statement of material facts in support of its Motion, ECF No. 19. Mr. Anderson did not oppose any of Motorists Mutual's facts, and, in his *own* concise statement of material facts, incorporated all of Motorists Mutual's material facts by reference. ECF No. 24 ¶ 2. The only addition to Mr. Anderson's concise statement of material fact was that he attached a "complete copy of the Declarations sheet and the Underinsured Motorist Coverage - Part C, PP 74 18, provisions of the Motorist[s] Mutual policy issued" in this case. ECF No. 24 ¶ 2. Thus, it appears to the Court that the parties agree on the undisputed material facts in this case recited below, as they pertain to the cross-motions presently before the Court.

### A.   The Accident

Theresa Anderson died in a motor vehicle accident that occurred on October 30, 2012 on Second Avenue in the City of Pittsburgh. ECF No. 19 ¶ 1. Wendy Meyers was operating the vehicle in which Theresa Anderson was a passenger at the time of the accident. *Id.* ¶ 2. The other vehicle involved in the accident was a truck driven by Austin Rummel and owned by M&C Trucking Company. *Id.* ¶ 3.

### B.   Applicable Insurance Policies at the Time of the Accident

Wendy Meyers was insured by State Farm Mutual Automobile Insurance Company on a policy of insurance providing $100,000 in liability coverage (the "State Farm Policy"). *Id.* ¶ 8.

Austin Rummel, M&C Trucking Company and John Muchesko had primary liability limits of $1,000,000 on a policy written by Liberty Mutual Insurance Company ("Liberty Mutual"). *Id.* ¶ 10. They were also insured under an umbrella policy written by Liberty Mutual with liability limits of $4,000,000 (together, with the primarily liability policy, the "Liberty Mutual Policies"). *Id.* ¶ 11.

Theresa Anderson was insured by Motorists Mutual on a policy providing $100,000 of underinsured motorist coverage ("UIM") per accident (the "Motorists Mutual Policy"). *Id.* ¶ 13. She elected stacking of UIM coverage for the two vehicles covered under the policy. *Id.* ¶ 14. As a result of her election of the stacking option, Ms. Anderson has $200,000 of UIM coverage available for the October 30, 2012 accident. *Id.* ¶ 15.

### C.  The Underlying Litigation and Related Settlement

Following the accident, Mr. Anderson filed three actions[3] related to the accident, which were all consolidated at GD 14-015587 in the Court of Common Pleas of Allegheny County, Pennsylvania. *Id.* ¶ 7.

With respect to Wendy Meyers, State Farm paid its policy limit of $100,000 in settlement of Mr. Anderson's claim. *Id.* ¶ 9. Mr. Anderson also settled his claim against Austin Rummel, M&C Trucking Company and John Muchesko (the "Rummel Tortfeasors") for $550,000. *Id.* ¶ 12. Upon being informed of the settlement with the defendants in the third-party action in Allegheny County, Pennsylvania, Motorists Mutual consented to the settlement in accordance with the terms of the Motorists Mutual Policy. *Id.* ¶ 16 (citing ECF No. 1-2, Mr. Anderson's complaint stating that "[p]rior to the claims against the third party insurers above, the Plaintiff requested and received from Motorist Mutual[] approvals necessary to meet the policy requirements to settle with

---

[3] The first action was against M&C Trucking Company, John Muchesko, Austin Rummel, the City of Pittsburgh, Pennsylvania Department of Transportation, and Wendy Meyers at GD 14-015587 in the Court of Common Pleas of Case Allegheny County, Pennsylvania. ECF No. 19 ¶ 4.

The second action was against Pennsylvania Department of Transportation (PennDOT) at GD 14-017380 in the Court of Common Pleas of Allegheny County, and PennDOT subsequently joined Wendy Meyers, City of Pittsburgh, M&C Trucking Company, John Muchesko, and Austin Rummel as additional defendants. *Id.* ¶ 5.

The third action was against M&C Trucking Company, John Muchesko, and Austin Rummel at GD 14-019520, and those defendants subsequently joined the City of Pittsburgh, Commonwealth of Pennsylvania Department of Transportation, and Wendy Meyers as additional defendants. *Id.* ¶ 6.

the third party carriers and proceed with a UIM claim under the Motorist Mutual Policy"). On June 4, 2020, Mr. Anderson settled and discontinued the consolidated cases. *Id.* ¶ 17.

    **D.**    **The Applicable Provision of the Motorists Mutual Policy**

As relevant to this case, Motorists Mutual's UIM endorsement provides that it will pay UIM benefits if "[t]he limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements…" (the "UIM Exhaustion Clause"). *Id.* ¶ 22; *see also* ECF No. 24-1 at 3.

**III.**    **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170 (3d Cir. 2017) (internal citations and quotations omitted). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.,* 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987)). That said, "[i]f the non-moving party bears

the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, summary judgment "requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted). But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor…to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations and quotations omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 requires the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

"Where, as here, cross-motions for summary judgment are filed, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, No. 19-2184, 2020 U.S. Dist. LEXIS 83633, at *6 (E.D. Pa. May 12, 2020) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

IV.  **Analysis**

    A.  **Motorists Mutual is Entitled to a Credit of the Sum of the Amounts Available Under the State Farm and Liberty Mutual Policies**

        1.  **The Parties' Summary Judgment Arguments**

Motorists Mutual seeks summary judgment regarding the amount of credit it should receive on Mr. Anderson's UIM claim. ECF No. 18. Motorists Mutual contends that it should receive $5,100,000—that is, the sum of the policy limits of (1) Wendy Meyers' State Farm Policy ($100,000) *plus* (2) Austin Rummel, M&C Trucking Company and John Muchesko's Liberty Mutual Policies (a primary liability policy of $1,000,000 and an umbrella policy of $4,000,000). *See generally, id.*

Mr. Anderson seeks partial summary judgment that unless Motorists Mutual can prove that the Rummel Tortfeasors' percent of fault equal or exceeded credit 60%, Motorists Mutual is entitled to a credit equal only to the amount Plaintiff was legally entitled to recover from the joint tortfeasors, i.e. $650,000—that is, the sum of the amounts actually paid in settlement of the claims (1) Wendy Meyers' State Farm Policy for $100,000 *plus* (2) Austin Rummel's, M&C Trucking Company's and John Muchesko's Liberty Mutual Policies for $550,000. *See generally,* ECF No. 21.

### 2. The Court Will Apply Pennsylvania Law

As a federal court sitting in diversity jurisdiction, this Court must apply substantive state law. *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938); *Collins v. Mary Kay, Inc.*, 874 F.3d 176 (3d Cir. 2017). The parties do not dispute that Pennsylvania law applies.

In applying Pennsylvania substantive law, this Court applies "the state law as pronounced by the highest court of the state . . . . However, when the highest court of the state has not addressed an issue, a federal court must predict how the highest state court would resolve the issue," such as by looking "'to the opinion of an intermediate appellate court.'" *Giehl v. Terex Utilities*, No. 3:12-0083, 2012 U.S. Dist. LEXIS 49354, at *25–26 (M.D. Pa. Apr. 9, 2012) (quoting *Aetna Cas. & Sur. Co. v. Farrell*, 855 F.2d 146, 148–49 (3d Cir. 1988)).

"In predicting how the highest state court would decide an issue," the Court looks to "analogous state court cases and '[i]n the absence of an authoritative pronouncement by a state's highest court, … may give serious consideration to the opinion of an intermediate appellate court." *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010) (citing *Aetna Cas. & Sur. Co. v. Farrell*, 855 F.2d 146, 148 (3d Cir. 1988)). "If no state supreme or appellate court has resolved the issue, the court must 'look to analogous state court cases . . . [and] scholarly treatises . . . "with an eye toward the broad policies that informed those adjudications, and to the doctrinal trends which they evince."'" *Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 910 n. 4 (M.D. Pa. 2019) (quoting *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010) (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662–63 (3d Cir. 1980)). However, it is not the Court's "proper role … to lead the state courts in the interpretation of state law." *Hudson v. Eaglemark Sav. Bank*, 475 F. App'x 423, 426 (3d Cir. 2012) (citing *Manning v. Princeton Consumer Discount Co.*, 380 F. Supp. 116, 120 (E.D. Pa. 1974)).

### 3. Pennsylvania Underinsured Motorists Credit for Exhaustion Provisions under *Boyle v. Erie*

Based on the parties' briefing and the Court's own research, it appears that "[t]here is no controlling Pennsylvania Supreme Court decision on the issue of enforcement of exhaustion clauses concerning UIM benefits," however, the "Pennsylvania Superior Court has decided a number of cases concerning exhaustion clauses in the context of UIM benefits." *Allstate Prop. & Cas. Ins. Co. v. Banks*, No. 10-241, 2010 U.S. Dist. LEXIS 80048, at *20–21 (W.D. Pa. Aug. 9, 2010) (Mitchell, M.J.).  The parties' summary judgment motions are centered around one such Pennsylvania Superior Court case—*Boyle v. Erie*—and its applicability to the present case.

In *Boyle*, the Boyles were involved in an accident with two third parties, Speelman and Hitchcock, and brought a civil action for injuries against both Speelman and Hitchcock.  656 A.2d 941, 942 (Pa. Super. 1995).  The parties settled by agreement with Speelman for $15,000 (the limits of Speelman's liability coverage), and with Hitchcock for $150,000 (50% of Hitchcock's liability coverage).  *Id.*  The Boyles then made a claim under the UIM provisions of their own policy with their insurer, who denied coverage because the Boyles had not exhausted the limits of Hitchcock's liability policy and because the Boyles had settled with the third-party tortfeasors without defendant insurer's consent.  *Id.*

The applicable UIM policy by the Boyle's insurer contained the following exhaustion clause, which stated that:

> With respect to underinsured motor vehicles, we will not be obligated to make any payment until the limits under all bodily injury insurance policies and liability bonds applicable at the time of the accident, including other than motor vehicle insurance, have been exhausted by payment of settlements or judgments.

*Id*.

The Pennsylvania Superior Court in *Boyle* found that to strictly enforce a policy's exhaustion language that required the insurance policies be exhausted by payment of settlements or judgments prior to allowing an insured seek UIM benefits may prevent an "injured insured from accepting a reasonable, third party settlement and require that the third party litigation be pursued to final judgment." *Id.* at 943. With respect to the insured, a strict enforcement of the clause would both (1) delay and lessen the insured's recovery, thereby undercutting the legislative intent behind underinsured benefits and (2) unnecessarily burden the judicial system. *Id.*

With respect to the UIM insurer, the Superior Court interpreted such an exhaustion clause as a protection by an insurance company "against a demand by its insured to fill the 'gap' after a weak claim has been settled for an unreasonably small amount." *Id.* Such an interpretation prevents the insured from having the "absolute and arbitrary discretion to determine how payment should be apportioned between his or her own insurance company and the tortfeasor's liability carrier." *Id.*

Thus, the Superior Court reconciled the conflicting interests of insured and insurer by construing the exhaustion requirement as a "threshold requirement and not a barrier to underinsured motorist insurance coverage." *Id.* Under *Boyle*, "when the insureds settled their claim against the tortfeasor's liability carrier for less than policy limits, the [UIM] carrier was entitled to compute its payment to its injured insureds as though the tortfeasor's policy limits had been paid." *Id.* at 943–44. According to the Pennsylvania Superior Court, this approach balanced the relevant policy interests by providing that "the insureds will not be allowed [UIM] benefits unless their damages exceed the maximum liability coverage provided by the liability carriers of other drivers involved in the accident; and their insurer will, in any event, be allowed to credit the full amounts of the tortfeasors' liability coverages against the insureds' damages." *Id.*

*Boyle*'s holding has been applied in subsequent Pennsylvania Superior Court cases and in federal court cases. *Allstate Prop. & Cas. Ins. Co.*, 2010 U.S. Dist. LEXIS 80048, at *23 (collecting cases and noting that federal courts have "decided that Boyle is an accurate indicator of Pennsylvania law holding that insureds may only recover underinsured motorist benefits to the extent that their awarded damages exceed the aggregate of coverage afforded by the liability carriers of other involved motorists." (internal quotation omitted)).

Motorists Mutual argues that *Boyle v.* is dispositive in this case, and that it is entitled to a credit equal to aggregate amount the tortfeasors policy limits—$5,100,000. ECF No. 19.

Mr. Anderson contends that *Boyle* is inapplicable for two reasons: (1) the underlying competing policy concerns in *Boyle* are no longer applicable because of the Pennsylvania Fair Share Act, which was enacted in 2011 (42 Pa. C.S. § 7102), and established comparative negligence principles replacing the joint and several liability principles that existed when *Boyle* was decided; and (2) the plain language of the Motorists Mutual Policy here—requiring exhaustion of "any" of the third party limits of liability—differs from that of *Boyle* which required the exhaustion of "all" of the third party limits. ECF No. 21.

### a. The Court Need Not Decide Whether the Pennsylvania Fair Share Alters *Boyle*'s Holding

The Court turns to Mr. Anderson's first argument, that this case is distinguishable from *Boyle* because of the enactment of the Pennsylvania Fair Share Act in 2011 (42 Pa. C.S. § 7102). Mr. Anderson contends that under the Fair Share Act, a joint tortfeasor is only liable to pay for damages caused by the negligence of another joint tortfeasor if the former tortfeasor's liability equals or exceeds 60%. ECF No. 21 at 8. Following such logic, Mr. Anderson contends that Motorists Mutual must prove that the Rummel Tortfeasors' liability equals or exceeds 60% to

claim the full credit of $5,000,000 under the Liberty Mutual Policies. ECF No. 21 at 11–12. If unable to do so, Motorists Mutual should only be entitled to a credit of the amount paid pursuant to the settlements ($650,000 in total), because Mr. Anderson would have been unable to recover the full amount of damages from the Rummel Tortfeasors under the Pennsylvania Fair Share Act in 2011.

Even assuming the enactment of the Pennsylvania Fair Share Act altered *Boyle*'s holding, Mr. Anderson's argument still fails because it is not clear that the Pennsylvania Fair Share Act applies where the plaintiff's negligence is not in question, as is the case here.

This Court "give[s] serious consideration to the opinion of an intermediate appellate court." *Holmes*, 598 F.3d at 118. Specifically, the Court takes note of the Pennsylvania Superior Court's historical and textual analysis of the Fair Share Act in *Spencer v. Johnson*. 249 A.3d 529 (Pa. Super. 2021). In that case, the Superior Court found, as an alternative holding, that for the "Fair Share Act to apply, the plaintiff's negligence must be an issue in the case." *Id.* at 559. Because the plaintiff's negligence was not at issue in the case, the Superior Court, in the alternative, would have found that the defendants were still "jointly and severally liable for [plaintiff's] injuries. *Id.* at 559–60 (citing *Baker v. AC&S, Inc.*, 755 A.2d 664, 669 (Pa. 2000) (under the theory of joint and several liability, a plaintiff "may recover the entire damages award from only one of the joint tortfeasors.")).

Mr. Anderson contends that because Superior Court's primary conclusion was that the "trial court erred in failing to grant [plaintiff's] motion to mold the verdict *pursuant to the Fair Share Act*…," 249 A.3d at 557 (emphasis added), and remanded the case on the issue, the Court's alternative holding that the Fair Share Act did not apply when plaintiff's negligence is not at issue is not dispositive. ECF No. 30 at 3–5.

The Court's own research has revealed another Superior Court case issued while the pending summary judgment briefing was still open in this case, which is also instructive. Although non-precedential, the Superior Court in *Snyder v. Hunt* ordered the trial court to direct the jury to determine and award damages against co-defendants jointly and severally, because defendants "did not appear to allege, much less to prove, that [plaintiff] was contributorily negligent," and thus, "the Fair Share Act, 42 Pa.C.S.A. § 7102, does not shield them from the common law of joint and several liability under *Spencer*." No. 851 EDA 2020, 2021 Pa. Super. Unpub. LEXIS 2993, at *14–15 (Pa. Super. Nov. 10, 2021).

Thus, the Court predicts that because the decedent's negligence is not at issue in this case, the Pennsylvania Supreme Court would find that the Fair Share Act does not apply in cases such as this one, where the plaintiff's negligence is not in issue, and, as a result, that the traditional principles of joint and several liability would control.

### 4. Whether the Language of the Exhaustion Clause Renders *Boyle v. Erie*'s Holding Inapplicable

Having found that the Fair Share Act is not implicated by this case, the Court turns to Mr. Anderson's remaining argument regarding the text of the UIM Exhaustion Clause. Specifically, Mr. Anderson highlights the difference between the exhaustion clause in the *Boyle* policy, which stated that the insured was required to exhaust "all" liability policies, and the UIM Exhaustion Clause in this case, which requires the exhaustion of "any" policy. ECF No. 21 at 9; ECF No. 24-1 at 3. The parties dispute the meaning of the word "any" without any citations to case law or principles of interpretation.

### a. Pennsylvania Principles of Contractual Interpretation for Insurance Contracts

As recently summarized in *Kurach v. Truck Insurance Exchange*, Pennsylvania's principles of contractual interpretation for insurance contacts are as follows:

> In interpreting the relevant provisions of the insurance policies …, we are guided by the polestar principle that insurance policies are contracts between an insurer and a policyholder.… Thus, we apply traditional principles of contract interpretation in ascertaining the meaning of the terms used therein…. This requires our Court to effectuate the intent of the contracting parties as reflected by the written language of the insurance policies.... In this regard, the language of the policy must be considered in its entirety.
>
> If policy terms are clear and unambiguous, then we will give those terms their plain and ordinary meaning, unless they violate a clearly established public policy…. Conversely, when a provision of a policy is ambiguous, the policy provision is to be construed in favor of the policyholder and against the insurer, as the insurer drafted the policy and selected the language which was used therein…. Policy terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

235 A.3d 1106, 1116 (Pa. 2020) (internal citations and quotations omitted).

The Court looks first to the plain language of the UIM Exhaustion Clause, and specifically the word "any." "[I]n Pennsylvania, when words of common usage are used in an insurance policy, they should be construed in their natural, plain and ordinary sense…. The Court may also look to the dictionary definition." *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 165 (3d Cir. 2011) (internal citation omitted). The Pennsylvania Supreme Court's interpretation of the word "any" in the context of the court's statutory interpretation is also instructive. *See id.*

### b. The Definition of the Word "Any" Is Determined by the Context

In analyzing a statute, the Pennsylvania Supreme Court recently described the definitional issues surrounding the word "any":

> The word "any" ... has two commonly accepted alternative meanings in the English language which are diametrically opposed. Black's Law Dictionary recognizes this "diversity of meaning," which is dependent on the context in which "any" is used in a statute, as well as the statute's overarching subject; thus, "any" could mean "'all' or 'every,' as well as 'one.'" Black's Law Dictionary 94 (6th ed. 1991). This definitional dichotomy is also recognized by dictionaries of the English Language. *See* Webster's New Universal Unabridged Dictionary (2001) (defining "any" as "one," and, alternatively, as "every," or "all"); The American Heritage Dictionary 117 (2nd. coll. ed. 1982) (enumerating varying definitions of "any" to include "one or another without restriction or exception," or "[t]he whole amount of; all").

*Snyder Bros. v. Pa. PUC*, 198 A.3d 1056, 1072 (2018) (internal quotations and cited omitted); *see also id.* (citing *Benat v. Mut. Ben. Health & Acci. Asso.*, 159 A.2d 23 (1960), *aff'd*, 166 A.2d 880 (Pa. 1961), which noted that when construing the word "any" in an insurance policy, "the word 'any' is defined by Webster as 'one indifferently out of a number.' It is an indefinite pronominal adjective used to designate things in a general way without pointing out any one in particular…. The word implies singularity in number, or selectivity among a number…. It is therefore apparent that the word 'any' is not susceptible of a categorical definition meaning 'all' or 'every'….. The significance of the word "any" is discoverable in its context…."). Following this approach, the Court will determine whether the meaning of "any" is ambiguous when read in the overall context of the UIM Exhaustion Clause.

### c. "Any" as Used in the UIM Exhaustion Clause Unambiguously Means "All"

The Court now turns to the context of "any" as used in the UIM Exhaustion Clause in this case, and finds, for the reasons that follow, that the meaning of "any" in the UIM Exhaustion

16

Clause, when read in the overall context of the UIM Exhaustion Clause, unambiguously means "all."

In *Standard Fire Ins. Co. v. Wagner*, the United States District Court for the Middle District of Pennsylvania was confronted with an exhaustion clause containing "any" instead of "all." 3:05-0580, 2006 U.S. Dist. LEXIS 42853, at *7 (M.D. Pa. June 26, 2006) ("In *Boyle*, the exhaustion clause spoke of exhausting the liability insured of 'all' responsible motor vehicles," whereas in *Standard Fire* "the language of the policy speaks of 'any' liability policy."). Having acknowledged the textual difference between the policy at issue and the policy in *Boyle*, the Middle District nonetheless considered "the context of this clause and the related application for underinsured motorist benefits…," and found that the purpose of such clause is the same as the clause in *Boyle*. *Id.* Thus, the UIM insurer was "entitled to a credit for the liability limits of the tortfeasors against whom [the insureds] pursued claims and received settlements." *Id.*

The Court's own research has uncovered other cases that have not directly addressed the difference between "any" versus "all," but have nonetheless applied, without comment on the issue, *Boyle*'s principles to an exhaustion clause that contained the words "any" instead of "all." *See Chambers v. Aetna Cas. & Sur. Co.*, 658 A.2d 1346, 1347 (1995) (applying *Boyle* to a single tortfeasor scenario to a policy requiring exhaustion of "the limits of liability under *any* applicable bodily injury…" (emphasis added)); *Chudyk-Heishman v. Liberty Mut. Ins. Co.*, No. 1:05-CV-1559, 2006 U.S. Dist. LEXIS 16610, *8–9, *14–16 (M.D. Pa. Apr. 3, 2006) (rejecting public policy challenge to arbitration award providing for credit for the full policy limits of joint tortfeasor with whom the insured had settled for less that policy limits when UIM policy required exhaustion of "the limits of liability under *any* applicable bodily injury…" (emphasis added)).

The Court now turns to the context of the UIM Exhaustion Clause at issue here to discern whether "any" means "one of many" or "all." The UIM Exhaustion Clause requires the exhaustion of something before Motorists Mutual is obligated to pay UIM benefits. By providing a precondition, notably the receipt of a certain sum from third parties, the UIM Exhaustion Clause protects an insurance company "against a demand by its insured to fill the 'gap' after a weak claim has been settled for an unreasonably small amount." *Boyle*, 656 A.2d at 943. If the Court interprets "any" to mean "one of many" rather than "all" in the context of the UIM Exhaustion Clause, we would fail to address the Superior Court's concern in *Boyle*. *See id.* (seeking to prevent the insured from having "absolute and arbitrary discretion to determine how payment should be apportioned between his or her own insurance company and the tortfeasor's liability carrier."). Under Mr. Anderson's proposed reading of the clause, a plaintiff could settle a single (of many) third party tortfeasor liability policies for 100% of the limit of liability, and then turn to the UIM carrier to recover the amounts under the UIM policy instead of seeking to recover from (or settling for a *de minimus* amount with) the other responsible joint tortfeasors.

Having reviewed the plain language of the Motorists Mutual Policy and the UIM Exhaustion Clause, and the meaning of the term "any" in context, as instructed by the Pennsylvania Courts, as well as the Middle District of Pennsylvania's interpretation of a substantially similar clause in *Standard Fire*,[4] the Court predicts that the Pennsylvania Supreme Court would interpret "any" to mean "all" in the UIM Exhaustion Clause, and finds that Motorists Mutual is "entitled to

---

[4] *Compare Standard Fire Ins. Co.,* 2006 U.S. Dist. LEXIS 42853, at *5 ("[W]e will pay Underinsured Motorists Coverage only if . . . the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by the payment of judgments or settlements…") *with* ECF No. 24-1 at 3 ("We will pay the [underinsured motor vehicle] coverage only if … [t]he limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements…").

a credit for the liability limits of the tortfeasors against whom [the insureds] pursued claims and received settlements." *Standard Fire Ins. Co.,* 2006 U.S. Dist. LEXIS 42853, at *10–11.

## V.     Conclusion

For the foregoing reasons, and having viewed the facts in the light most favorable to Motorists Mutual as the non-moving party, Mr. Anderson's Partial Motion for Summary Judgment, ECF No. 20, will be GRANTED in part, such that Motorists Mutual is not entitled to a credit of $500,000 based upon the limit of the City of Pittsburgh's liability under the Pennsylvania Political Subdivision Tort Claims Act, and DENIED in all other respects.

Additionally, for the same reasons, and having viewed the facts in the light most favorable to Mr. Anderson as the non-moving party, Defendant Motorists Mutual's Motion for Summary Judgment, ECF No. 17 will be GRANTED, such that Court will enter declaratory judgment that Motorists Mutual is entitled to a credit of $5,100,000 on Mr. Anderson's UIM claim.

DATED this 22nd day of June, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):
All Counsel of Record